861 F.2d 720
 131 L.R.R.M. (BNA) 3264
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
INTERNATIONAL AUTOMATED MACHINES, INC., Petitioner, Cross-Respondent,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent, Cross-Petitioner.
 Nos. 87-6174, 87-6310.
 United States Court of Appeals, Sixth Circuit.
 Oct. 28, 1988.
 
 Before CORNELIA G. KENNEDY, BOYCE F. MARTIN, Jr., and NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 The National Labor Relations Board ("the Board") found that petitioner International Automated Machines ("IAM") had violated section 8(a)(1) and (3) of the National Labor Relations Act (29 U.S.C. Sec. 158(a)(1), (3)) by wrongfully discharging three employees and committing other unfair labor practices while resisting an organization campaign. The Board issued a cease and desist order, required a new election, and ordered reinstatement of the wrongfully discharged employees. Petitioner argues that the Board's order is not supported by substantial evidence and is the result of unfair proceedings below. We disagree and AFFIRM the Board's order.
 
 Wrongful Discharge
 
 2
 The Board adopted the Administrative Law Judge's ("ALJ") conclusion that employees Sharon Collins, Sharon Ritzman, and Della Molnar were fired because of their participation in the unsuccessful organization campaign at IAM. Petitioner maintains that Collins quit voluntarily, and that Ritzman and Molnar were discharged pursuant to an "up-or-out" policy of eliminating "on-call" employees who proved unfit for promotion to full-time status. We conclude that substantial evidence supports the ALJ's findings.
 
 
 3
 It is undisputed that Sharon Collins was a well known union supporter. She was terminated on January 24, 1985, the day after the union lost the election. Petitioner contends Collins quit her job. While Collins scrawled "I quit" on her termination notice after an argument with her manager, Davis, the ALJ was warranted in finding that the decision to fire her already had been made. When Collins arrived at the plant on January 24 her time card had been removed and her final check and termination notice prepared.[1] Nor can Collins' unexcused absence on January 23 explain her termination. According to uncontradicted testimony, Davis' assistant, Crawford, previously had informed Collins that under IAM's established "point system" another absence in January would result in a five day suspension without pay, not termination.[2] Moreover, petitioner argues that Collins quit, not that she was terminated for unexcused absence. We cannot say that the Board erred in concluding Collins was discharged due to her strong and visible support for the union. See Coil-A.C.C. v. NLRB, 712 F.2d 1074, 1076 (6th Cir.1983) (suspicious timing and false explanation of termination supports finding of discriminatory discharge).
 
 
 4
 Sharon Ritzman and Della Molnar were the two most senior "on-call" employees at IAM. On-call employees performed essentially the same tasks as full-timers, but they received lower wages and no benefits. Dissatisfaction among the on-call employees was the primary impetus behind the union organization campaign. Petitioner acknowledges receiving notification of the campaign by August 29, 1985. Ritzman was discharged on August 29, 1985; Molnar on August 30. Neither employee received a contemporary explanation for her termination. Equally inexplicable is petitioner's assertion that Molnar's attendance record constituted IAM's primary reason for firing her. This claim is difficult to credit in light of the ALJ's uncontested finding that Molnar had received one award for perfect attendance in the summer of 1985 and would have earned another in August, but for her termination one day before the end of the month. The ALJ found that they had been terminated because petitioner learned of their participation in union activity on the morning of August 29. Alternatively, the ALJ concluded that even if petitioner did not know about Ritzman's and Molnar's union activity, it had removed them because their status as the most senior on-call employees made them " 'bloody shirts' " for the organizers to wave. Petitioner claims that it was unaware of Ritzman's and Molnar's participation in the campaign, explaining that they were removed under the company's "up-or-out" policy of eliminating on-call employees who prove unsatisfactory for promotion to full-time status.
 
 
 5
 Although direct evidence IAM knew about Ritzman's and Molnar's union activity is slight, we conclude that the Board's findings were warranted by the suspicious timing and circumstances of the discharges and the weakness of petitioner's explanation for its actions. See NLRB v. Garon, 738 F.2d 140, 147 (6th Cir.1984). Both employees were discharged immediately after participating in union activity. Ritzman was discharged three hours into her shift--a very odd time to implement a deliberative decision under the alleged "up-or-out" plan. Both Ritzman and Molnar had received "above average" evaluations on their previous performance ratings (30 and 31 out of 36, respectively). Neither employee had been warned that her job was in jeopardy. While both womens' performance ratings plummeted on their final evaluations, petitioner admits these evaluations were generated after it had already decided to fire the employees. Moreover, contrary to usual company practice, neither evaluation included input from the employees' immediate supervisors.[3]
 
 
 6
 The ALJ found petitioner's explanation that Ritzman and Molnar were removed under an "up-or-out" plan unconvincing. Petitioner claims the timing of the firings is explained by its long-standing policy of moving personnel "up" just prior to holidays, so they can receive holiday pay. But this does not explain why the "out" portion of the policy would be implemented proximate to a holiday. Moreover, as petitioner's brief recites, less than half of IAM's recent promotions have closely preceded a holiday, casting doubt on petitioner's claim such a policy exists. These doubts are strengthened by the fact that the purported "up-or-out" plan was neither put into writing nor communicated to employee supervisors. Further, the plan's supposed authors, President Duval and Boyk, gave conflicting testimony about the details of the plan.
 
 Prejudice and Bias
 
 7
 Petitioner also asserts it was denied a fair hearing below. We have carefully reviewed the record and conclude this charge is unfounded.
 
 
 8
 Petitioner also argues that it was denied a fair hearing because the Board drew an adverse inference from its failure to call production manager Davis, a key figure in all three discharges. Petitioner claims it relied on Wayne Construction, Inc., 259 N.L.R.B. 571 (1981), which stated in dicta that no adverse inference should arise from failure to call a witness equally available to both parties. The Board expressly rejected this dictum in the present case. We conclude that petitioner was not prejudiced by the Board's action, since the Board frequently has drawn such inferences in cases decided both before and after Wayne. See, e.g., Laredo Coca Cola Bottling Co., 613 F.2d 1338 (5th Cir.1980); Local Lodge 758, International Ass'n of Machinists, 275 N.L.R.B. 755, 760 n. 14 (1985) (citing Martin Luther King Nursing Ctr., 231 N.L.R.B. 15 n. 1 (1977)); Electrical Workers IBEW Local 3, 271 N.L.R.B. 1580, 1585 n. 6 (1984). Finally, petitioner's contention that the "formal papers" found in General Counsel's exhibit 1(f) were never properly admitted finds no support in the record.
 
 Conclusion
 
 9
 We hold that the Board's findings and conclusions find support in substantial evidence in the record, and we reject petitioner's claim that it was a victim of bias and prejudice below. The Board's Order is ENFORCED.
 
 
 
 [1]
 Davis' assistant, Joenita Crawford, testified that this was the only occasion during her one-year tenure in which a "self-termination" form had been prepared before the employee expressed a desire to quit
 
 
 [2]
 Crawford testified at the hearing but was not examined on this point
 
 
 [3]
 Ritzman's supervisor reportedly stated that IAM should not have fired her